**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE: | Bankruptcy No. 20 B 21625 |
| MARSHALL SPIEGEL, | Honorable Timothy A. Barnes |
| Debtor. | |
| MARSHALL SPIEGEL, | |
| Appellant, | |
| v. | Case No. 22 C 1559 |
| WINTRUST BANK, N.A., | Honorable LaShonda A. Hunt |
| Appellee. | |
| MATTHEW SPIEGEL, | |
| Appellant, | |
| v. | Case No. 24 C 1138 |
| OFFICIAL COMMITTEE OF UNSECURED CREDITORS, | Honorable LaShonda A. Hunt |
| Appellee. | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Marshall Spiegel ("Debtor") filed a chapter 11 bankruptcy in 2020. To date, the case has

spawned eight appeals, two of which are currently before this Court. In the first, 22 C 1559, Debtor

challenges an order overruling his objection to the claim of Wintrust Bank, N.A. ("Wintrust"). In

the second, 24 C 1138, Debtor's son, Matthew Speigel ("Matthew"), contests orders sustaining the

objection of the Official Committee of Unsecured Creditors ("Committee") to his claim, denying

a motion to disband or reconstitute the Committee, and overruling his objections to the

1

Committee's interim fee applications. For the reasons discussed below, the decisions of the bankruptcy court are affirmed.[1]

## BACKGROUND[2]

### I.   Condo Litigation and Sanctions Order

Debtor and Matthew have lived together at a condominium located at 1618 Sheridan Road, Wilmette, Illinois 60091 at all times relevant to these appeals. (R-1 at 1070; R-2 at 11). In 2015, Debtor sued several other owners of condos in the building, including members of the owners' association and their spouses. *See Spiegel v. Hall*, No. 15 L 10817 (Cir. Ct. Cook Cnty.) (the "State Court Action"). During that litigation, on March 29, 2019, the state trial court entered an order awarding sanctions in the amount of $1,225,000 against Debtor and his counsel, John Xydakis, for abusive, frivolous, and vexatious litigation tactics (the "Sanctions Order"). (R-1 at 246).

### II.   Letter of Credit and Appellate Court Order

On May 23, 2019, to stay enforcement of the Sanctions Order pending appeal, Debtor obtained a letter of credit (the "LOC") from Wintrust Bank in favor of beneficiary Eugene Murphy, Jr., counsel for the defendants in the State Court Action. (R-1 at 219-222). To secure the LOC, Debtor executed a promissory note for $1,225,000 payable to Wintrust Bank upon a draw of the LOC. (R-1 at 205-206). In turn, the promissory note was secured by assignments of four certificate of deposit ("CD") accounts. (R-1 at 207-218). The amount, ownership, and last four account number digits of each CD were as follows:

---

[1] Although these are separate appeals, for convenience and efficiency, the Court issues one combined opinion.

[2] This background section is comprised of facts taken from the records designated in these two appeals. Citations to the record refer to "R-1" for the first appeal and "R-2" for the second. Page numbers in citations to the record refer to the "PageID" at the top of the CM/ECF header.

- CD # 1: $250,000; owned by Debtor; account ending 0642;
- CD # 2: $500,000; owned by Debtor; account ending 2520;
- CD # 3: $250,000; owned by Matthew only; account ending 8763; and
- CD # 4: $225,000; owned by Matthew only; account ending 4178.

(R-2 at 14).

In order to draw on the LOC, the beneficiary was required to present the following:

1. BENEFICIARY'S SIGNED DRAFT AT SIGHT DRAWN ON WINTRUST BANK, BEARING THE CLAUSE "DRAWN UNDER WINTRUST BANK LETTER OF CREDIT NO.      DATED MAY 23, 2019."

2. BENEFICIARY'S SIGNED STATEMENT STATING:

(A). "I HEREBY CERTIFY THAT MARSHALL SPIEGEL HAS FAILED TO PERFORM TO SATISFY THE JUDGMENTS/ORDERS ENTERED ON MARCH 29, 2019 ("JUDGMENTS OR ORDERS") BY THE CIRCUIT COURT OF COOK COUNTY OF ILLINOIS LAW DIVISION IN THE CASE OF 1618 NORTH SHERIDAN ROAD CONDOMINIUM ASSOCIATION AND MARSHALL SPIEGEL ET. AL V. VALERIE HALL ET. AL., 15-L-10817 (CONSOLIDATED WITH 15-CH-18825 AND 16-L-3564) (COLLECTIVELY "LAWSUIT") AND HAS FAILED TO PAY ALL ACTUAL DAMAGES INCURRED IN CONSEQUENCE OF THE SUSPENSION OR STAY OF THE COLLECTION OF THE JUDGMENTS/ORDERS;"

3. COPIES OF EITHER (A) A CERTIFIED COPY OF AN ORDER/OPINION FROM THE APPELLATE COURT OF ILLINOIS FOR THE FIRST DISTRICT, AFFIRMING IN WHOLE OR IN PART THE JUDGMENTS/ORDERS ENTERED IN THE LAWSUIT (CONSOLIDATED WITH 15-CH-18825 AND 16-L-3564), OR DISMISSING THE APPEAL TOGETHER WITH A DATE OF CERTIFICATION SIGNED BY THE BENEFICIARY, STATING THE AMOUNT OF THE UNSATISFIED JUDGMENT PLUS INTEREST AT 9% AS OF THE DATE OF CERTIFICATION.

OR

3

> (B) A DATED CERTIFICATION SIGNED BY THE BENEFICIARY, STATING THAT: 1) THE LETTER OF CREDIT IS SET TO EXPIRE ON A DATE THAT IS TEN DAYS OR FEWER THAN THE DATE OF CERTIFICATION AND 2) THERE HAS BEEN NO DECISION OF THE APPELLATE COURT IN CONNECTION WITH THE CIRCUIT COURT DECISION ON THE CASE REFERENCE IN THE LETTER OF CREDIT, OR THERE HAS BEEN NO EXTENSION TO LETTER OF CREDIT NO. SB193800273 AND 3) THE AMOUNT OF THE UNSATISFIED JUDGMENT PLUS INTEREST AT 9% AS OF THE DATE OF THE CERTIFICATION.
>
> AND
>
> 4.    THE ORIGINAL OF THIS LETTER OF CREDIT AND ALL AMENDMENTS, IF ANY.

(R-1 at 219-220). The LOC is governed by the Uniform Customs and Practice for Documentary Credits of the International Chamber of Commerce (Publication 600) (the "UCP"). (R-1 at 221).

The Illinois Appellate Court affirmed the Sanctions Order on December 3, 2020 (the "Appellate Court Order").[3] (R-1 at 236-267). The beneficiary then drew on the LOC by presenting a draft, a signed statement certifying that the Sanctions Order had not been paid, a copy of the Appellate Court Order along with a certification letter stating under penalty of perjury that it was a true and correct copy, and the original LOC. (R-1 at 231-271).

## III.  **Debtor's Bankruptcy Case**

A couple weeks later, on December 16, 2020, Debtor filed for chapter 11 bankruptcy. (R-1 at 132). The bankruptcy case has a long and tortured procedural history—at this point, there are nearly 1400 docket entries. *See generally In re Spiegel*, No. 20 B 21625 (Bankr. N.D. Ill.) ("BK Dkt."). These appeals involve four issues that arose in the case.

---

[3] The Illinois Appellate Court subsequently vacated its order and dismissed the appeal because the Sanctions Order was not final and appealable. (R-1 at 277-294). As far as the Court knows, however, the Sanctions Order itself remains intact.

### A.     Wintrust's Claim

Wintrust filed a claim for $1,243,523.07 based on the draw on the LOC. (R-1 at 201-222). Debtor objected to the claim on the basis that Wintrust should not have paid out on the LOC because the beneficiary failed to strictly comply with its terms by failing to present a copy of the Appellate Court Order certified by the appellate court and instead presented a copy with his own certification. (R-1 at 196-200, 272-275). The bankruptcy court issued a Memorandum Decision and Order overruling Debtor's objection to Wintrust's claim. (R-1 at 301-314; BK Dkts. 502, 503). Although the primary basis for the decision rested on Debtor's failure to develop sufficient argument, the bankruptcy court also explained that the draw on the LOC and Wintrust's payment were proper under governing law. Debtor's appeal followed.[4]

### B.     Matthew's Claim

Matthew did not file his own claim in the bankruptcy case. (R-2 at 20). Rather, Debtor's Fifth Amended Plan of Reorganization and Amended Schedule E/F listed an unsecured claim in favor of his son for $475,000 for funds advanced through the CDs to secure the LOC. (R-2 at 543-556, 726-732). The Committee, which consisted of condo association members and their spouses and was represented by the same attorneys as the association, objected to Matthew's claim. (R-2 at 819-926). After considering the objection, extensive briefing, and evidence presented at a five-day evidentiary hearing at which Debtor, the Committee, and Matthew fully participated, the bankruptcy court issued a Memorandum Decision and Order sustaining the objection. (R-2 at 5-34; BK Dkts. 1206, 1207). In sum, the bankruptcy court held that the claim lacked presumptive

---

[4] Earlier in the bankruptcy case, Debtor filed an adversary complaint seeking to enjoin Wintrust from liquidating the certificates of deposit. *Spiegel v. Wintrust Bank, N.A. (In re Spiegel)*, No. 21 A 65 (Bankr. N.D. Ill.). After the bankruptcy court denied Debtor's motion for entry of a preliminary injunction, Debtor filed an appeal that was ultimately dismissed. *Spiegel v. Wintrust Bank, N.A.*, No. 21 C 5087 (N.D. Ill.) (J. Blakey).

validity as scheduled due to the omission of material information and, while Matthew had shown joint ownership and control over most of the relevant funds, the evidence did not prove that Debtor incurred any obligation to repay the funds. Accordingly, the bankruptcy court disallowed the claim in its entirety. (*Id.*)

### C.     Motions to Disband and Reconstitute Committee

As part of the contentious condo litigation,[5] Debtor and Matthew filed a joint motion to disband or reconstitute the Committee. (R-2 at 993-1026). After considering the parties' arguments on the matter, the bankruptcy court entered an order denying the motion for the reasons stated on the record—namely, that it lacked authority to disband a committee and that the record was insufficient to support reconstitution at the time. (R-2 at 1079, 1588-1685). A month later, Debtor and Matthew filed a second motion to reconstitute the Committee. (R-2 at 1106-1291). At a hearing to set the briefing schedule for that motion, Debtor and Matthew agreed to withdraw the request after the bankruptcy court advised them that the upcoming plan confirmation hearing would have to be rescheduled if they wished to brief the motion. (R-2 at 4037-4063).

### D.     Committee's Professionals' Compensation

Throughout the bankruptcy case, Debtor and Matthew lodged several objections to applications for compensation by the Committee's professionals on the basis that, among other things, the fees and costs were incurred for an improper purpose and were impermissibly disproportionate to the potential recovery. (*See, e.g.,* R-2 at 473-527, 656-668, 2555-2655). Over their objections, the bankruptcy court entered several orders partially allowing interim

---

[5] Two now-concluded appeals from the bankruptcy case arose from discovery disputes with the Committee. *Spiegel v. Official Committee of Unsecured Creditors*, No. 22 C 1622 (N.D. Ill.) (J. Rowland); *Spiegel v. Official Committee of Unsecured Creditors*, No. 22 C 1651 (N.D. Ill.) (J. Rowland).

compensation for the Committee's professionals. Notably, in the March 17, 2023 order regarding the third interim application for compensation, the bankruptcy court found that Matthew lacked standing at the time the objection was filed because the amended schedules pursuant to which he asserted rights as a creditor had not been filed until after the objection. (R-2 at 753).[6] The bankruptcy court also noted that interim fee awards are interlocutory in nature and could be reexamined and adjusted by an awarding court until a final compensation decision is made. (*Id.*) As of June 2024, the bankruptcy court had awarded $1,159,364.75 in interim fees and costs to the Committee's professionals. (BK Dkt. 1258).

## IV.   Subsequent History

Throughout the course of Debtor's bankruptcy case, he proposed several plans of reorganization, many of which purported to provide for 100% to general unsecured creditors; however, none proceeded to confirmation. (BK Dkts. 158, 264, 406, 635, 728, 776, 918, 1038). Debtor's proposed seventh amended plan of reorganization purported to provide for 100% to general unsecured creditors and agreed to subordinate Matthew's claim. (R-2 at 1292-1306). In September 2024, the bankruptcy court denied plan confirmation and appointed a trustee but declined to convert the case to chapter 7 at that time. (BK Dkt. 1273).[7] Subsequently, in December

---

[6] Nonetheless, the bankruptcy court initially recognized the presumptive validity of Matthew's claim and therefore his standing at the time the decision was issued. (R-2 at 753). As the court later noted, however, that decision was made in the narrow context of standing at the time and was neither a general determination nor law of the case. (R-2 at 20.)

[7] Debtor appealed this decision too, but there has been little substantive docket activity in that case except for the appellant's designation of the record and a recently filed motion to consolidate. *See Spiegel v. Spiegel*, No. 24 C 9811 (N.D. Ill.) (J. Kness). Matthew also appealed the order appointing a chapter 11 trustee, but there has been minimal docket activity in that case as well. *See Spiegel v. Spiegel*, No. 24 C 9913 (N.D. Ill.) (J. Kendall).

2024, the bankruptcy court granted the chapter 11 trustee's motion to convert from a chapter 11 reorganization to a chapter 7 liquidation. (BK Dkt. 1349).[8]

## STANDARD OF REVIEW

In bankruptcy appeals, legal conclusions are reviewed *de novo* and factual findings are reviewed for clear error. *Follett Higher Educ. Grp., Inc., v. Berman (In re Berman)*, 629 F.3d 761, 766 (7th Cir. 2011) ("We apply the same standard of review as the district court, examining the bankruptcy court's legal findings de novo and its findings of fact for clear error."); *Matter of A-1 Paving & Contracting, Inc.*, 116 F.3d 242, 243 (7th Cir. 1997) ("In an appeal from a bankruptcy court's decision, we use the same standard of review used by the district court below: the bankruptcy court's findings of fact are upheld unless clearly erroneous and the legal conclusions are reviewed de novo.").

## DISCUSSION

In these appeals, Debtor and Matthew assert that the bankruptcy court erred in its rulings allowing Wintrust's claim, disallowing Matthew's claim, declining to disband or reconstitute the Committee, and approving compensation for the Committee's professionals. After addressing whether appellate jurisdiction over all of these matters exists, the Court will discuss the remaining issues in turn.

## I. Jurisdiction

District courts have jurisdiction to hear appeals from final judgments, orders, and decrees entered in bankruptcy cases. 28 U.S.C. § 158(a)(1). "The Supreme Court has explained that § 158 authorizes appeal as of right from 'orders in bankruptcy cases . . . if they finally dispose of discrete

---

[8] Debtor appealed the conversion order as well. *Spiegel v. Spiegel*, No. 24 C 12860 (N.D. Ill.) (J. Shah).

disputes within the larger [bankruptcy] case.'" *Hazelton v. Bd. of Regents for the Univ. of Wis. Sys.*, 952 F.3d 914, 917 (7th Cir. 2020) (quoting *Bullard v. Blue Hills Bank*, 575 U.S. 496, 501 (2015)). "Generally, the easiest way to tell whether an order is sufficiently final in the bankruptcy context is whether it resolves a proceeding within the bankruptcy that would be a freestanding lawsuit if there were no bankruptcy action." *In re McKinney*, 610 F.3d 399, 402 (7th Cir. 2010). "However, when the order in question does not finally resolve a discrete dispute and '[t]he parties' rights and obligations remain unsettled,'" there is no jurisdiction to hear an appeal. *Hazelton*, 952 F.3d at 917 (quoting *Bullard*, 575 U.S. at 503).

The parties do not dispute jurisdiction over the orders on the claim objections, and the Court has no reason to question its ability to hear an appeal of an order finally resolving the status of a claim in a bankruptcy case. The parties disagree, however, as to whether the Court has jurisdiction to consider Mathew's appeal of the orders denying the motion to disband or reconstitute and awarding interim compensation.

Although the parties focus on the appealability of such orders based on whether they were final or merged into the order disallowing Matthew's claim,[9] the Court finds it unnecessary to reach those issues. Any jurisdiction over Matthew's appeal of orders regarding the Committee hinges on his standing to pursue relief concerning those matters in the bankruptcy case. In other words, if Matthew lacks standing in the bankruptcy case, then he cannot appeal those orders, regardless of their finality. As discussed below, the Court affirms the bankruptcy court's decision

---

[9] According to Matthew, although those orders may not have been final as to him when entered, they became final when his claim was disallowed under the merger doctrine because it effectively ended his participation in the case. With respect to the interim compensation orders, the Committee contends that they are non-appealable, non-final interlocutory orders that were not merged into the order disallowing Matthew's claim because they were not related. As to the order denying the motion to disband or reconstitute, the Committee claims that decision was final and appealable when it was issued but the appeal was untimely because it was filed more than 14 days after entry. *See* Fed. R. Bankr. P. 8002(a)(1).

to disallow Matthew's claim. As such, Matthew lacked standing in the bankruptcy case to be heard on the other matters as well. *See In re Cult Awareness Network, Inc.*, 151 F.3d 605, 607 (7th Cir. 1998) (holding that a pecuniary interest in the outcome of a bankruptcy proceeding is necessary to have standing). Accordingly, the only issues to be resolved arise from the bankruptcy court orders regarding Wintrust's and Matthew's claims.

## II.    Wintrust's Claim

Under Section 502(a) of Title 11 of the United States Code (the "Bankruptcy Code"), a claim filed by a creditor is deemed allowed absent an objection. 11 U.S.C. § 502(a). The initial burden to overcome the presumption of allowance under Section 502(a) falls on the objecting party. *In re J.S. II, L.L.C.*, 389 B.R. 563, 570 (Bankr. N.D. Ill 2008). If the objecting party overcomes the presumption, then the burden shifts back to the claimant to produce evidence and prove that the claim is allowable. *In re O'Malley*, 252 B.R. 451, 455-456 (Bankr. N.D. Ill. 1999).

Wintrust filed a claim in the amount of $1,243,523.07, representing the amount it was owed under the promissory note after the draw on the LOC. (R-1 at 202). Debtor objected, arguing that Wintrust had failed to strictly comply with the draw requirements of the LOC by accepting a copy of the Appellate Court Order certified by the beneficiary, as opposed to a copy certified by the state court. (R-1 at 196-222). Applying the above burden-shifting framework, the bankruptcy court first held that Debtor failed to meet his initial burden to overcome the presumption that Wintrust's claim was allowed because he failed to connect his strict compliance argument to the law governing the LOC. (R-1 at 308-309). Substantively, the bankruptcy court concluded that strict compliance was not required. Rather, the UCP, which governed under the terms of the LOC, allows a bank to honor a draw on a letter of credit when the bank determines that the draw *appears* on its face to comply. (R-1 at 311-312).

10

The bankruptcy court also examined the applicable Illinois Uniform Commercial Code (the "UCC") provisions and case law and determined that they impose essentially the same standard, which is less than strict compliance. (R-1 at 310-311) (citing 810 ILCS 5/1-302(a) (permitting parties to vary the effect of the UCC by agreement); 180 ILCS 5/5-108(a) ("issuer shall honor a presentation that . . . *appears* on its face strictly to comply . . . [and] shall dishonor a presentation that does not *appear* so to comply.") (emphasis added); *Integrated Measurement Sys., Inc. v. Int'l Com. Bank of China*, 757 F. Supp. 938, 943 (N.D. Ill. 1991) (noting that the Illinois Appellate Court "appeared to move away from the traditional doctrine of 'strict compliance' to a more lenient standard of 'reasonable compliance'") (citing *First Arlington Nat'l Bank v. Stathis*, 90 Ill. App. 3d 802, 814-815 (1st Dist. 1980)). Based on an application of governing law, the bankruptcy court held: (1) the LOC draw language allowed for the Appellate Court Order to be certified by the beneficiary, as was done in this case; (2) the ambiguous reading proposed by Debtor was unreasonable, as it would result in the impossibility of one provision and require the insertion of terms in another; (3) considering the parties' competing interpretations of the LOC, Wintrust's reading was more fair and customary; (4) Wintrust's interpretation led to a reasonable outcome, which is consistent with the standard under the law governing the LOC; and (5) the governing law grants Wintrust discretion in determining whether the draw *appeared* to comply with the terms of the LOC. (R-1 at 311-313).

Debtor now reasserts his strict compliance argument, insisting that Draw Condition 3(A) of the LOC required presentation of a copy of the mandate certified by the circuit court. Debtor also contends that the bankruptcy court erred in its analysis by construing ambiguity in the LOC against Debtor when the law requires ambiguity to be construed against Wintrust as the drafter. In addition, Debtor takes issue with the bankruptcy court's determination that he failed to connect his

strict compliance argument to the governing law and faults the court for going "well beyond" the issues presented and examining choice of law and the UCP.

As an initial matter, Debtor's arguments on appeal suffer from the same overarching flaws as his arguments before the bankruptcy court. He relies primarily on a Seventh Circuit case governed by Saudi Arabian law that "*assume[d], without affecting [the] decision*, that [the tradition of requiring strict compliance] continue[d] in full force." *Banque Paribas v. Hamilton Indus. Int'l, Inc.*, 767 F.2d 380, 384 (7th Cir. 1985) (emphasis added). Debtor also cites several non-binding out-of-circuit decisions that do not apply the law applicable to this case. In addition, Debtor places great weight on the discussion in *People v. Fiddler* regarding the distinction drawn by the legislature between a "certification" and a "certified copy" but fails to acknowledge that *Fiddler* dealt with interpretation of a specific provision of the Vital Statistics Act concerning death certificates for purposes of determining admissibility of evidence. 102 Ill. App. 2d 319, 325 (1st Dist. 1968).[10]

Neither case directly applies here, as the parties agreed that the LOC would be governed by the UCP, which is permitted under the UCC. Debtor's contention that the bankruptcy court exceeded its authority is a nonstarter. Interpretating the LOC was the court's primary focus, so the standard expressly provided for by the LOC was certainly worthy of discussion, regardless of whether the parties raised the issue. The Court thus agrees that Debtor failed both before the bankruptcy court and here to meet his initial burden to overcome the presumption that Wintrust's claim is allowable.

---

[10] Debtor also failed to note that the decision was reversed on appeal, albeit on other grounds. *People v. Fiddler*, 45 Ill. 2d 181, 184 (1970).

In any event, whether applying an "appears to comply", "reasonably complies" or "strict compliance" standard, the Court agrees with the bankruptcy court's merits determination that Wintrust's decision to honor the beneficiary's draw on the LOC was proper. It is undisputed that the relevant section of the LOC required the beneficiary to present:

> COPIES OF . . . A CERTIFIED COPY OF AN ORDER/OPINION FROM THE APPELLATE COURT OF ILLINOIS FOR THE FIRST DISTRICT, AFFIRMING IN WHOLE OR IN PART THE JUDGMENTS/ORDERS ENTERED IN THE LAWSUIT (CONSOLIDATED WITH 15-CH-18825 AND 16-L-3564), OR DISMISSING THE APPEAL TOGETHER WITH A DATE OF CERTIFICATION SIGNED BY THE BENEFICIARY, STATING THE AMOUNT OF THE UNSATISFIED JUDGMENT PLUS INTEREST AT 9% AS OF THE DATE OF CERTIFICATION.

(R-1 at 219-220) (Draw Condition 3(A)). It is also undisputed that the beneficiary presented a certification letter that, among other things, enclosed a copy of the Appellate Court Order, certified under penalty of perjury that the copy was true and correct, and provided a link to the order on the court's website. (R-1 at 233-235). Upon receipt of those and the other required items, Wintrust honored the draw and paid the proceeds to the beneficiary. Regarding Draw Condition 3(A), the bankruptcy court concluded that the language was not ambiguous, but imprecise. (R-1 at 312). Debtor argues this is wordplay, as "ambiguous" and "imprecise" are essentially synonymous, and thus the ambiguity should be construed against Wintrust as LOC drafter.

"In construing the nature and terms of a letter of credit, the same general principles apply which govern other written contracts." *Bank of N.C., N.A. v. Rock Island Bank*, 570 F.2d 202, 207 (7th Cir. 1978). For purposes of contract interpretation, "ambiguity" exists "when the contract contains language that is susceptible to more than one *reasonable* interpretation." *Hillenbrand v. Meyer Med. Grp., S.C.*, 288 Ill. App. 3d 871, 876 (1st Dist. 1997) (emphasis added). To the extent that ambiguity exists, such ambiguity should be construed against the drafter. *Hot Light Brands,*

*L.L.C. v. Harris Realty Inc.*, 392 Ill. App. 3d 493, 499 (2d Dist. 2009). Whether the language of an agreement is ambiguous is a question of law. *Regency Comm. Assocs., LLC v. Lopax, Inc.*, 373 Ill. App. 3d 270, 275 (4th Dist. 2007).

Debtor reads Draw Condition 3(A) of the LOC to mean that the beneficiary was required to present a court-certified copy of the appellate court mandate (not the order).[11] Just as the bankruptcy court did, this Court concludes that Debtor's proposed interpretation is not reasonable and therefore does not create any ambiguity. There is simply no language in Draw Condition 3(A) requiring the appellate court order to be certified *by a court*. Rather, the language is broad (or to use the bankruptcy court's word, "imprecise") enough to permit certification by the beneficiary. Furthermore, the condition expressly states that a copy of an "order/opinion," not a mandate,[12] was required. The bankruptcy court considered these issues and reached the same conclusions. Thus, even assuming that strict compliance with the terms of the LOC was required, the beneficiary met that standard by presenting his certification along with a copy of the Appellate Court Order. This too was surely sufficient under the lesser "appears to comply" and "reasonably complies" standards of the UCP and UCC. Accordingly, Debtor has not shown that the bankruptcy court erred in overruling his objection to Wintrust's claim.

---

[11] In so arguing, Debtor appears to acknowledge that the state appellate court does not issue certified copies of orders. In a footnote, however, Debtor seems to suggest the possibility of obtaining a court-certified copy of the order pursuant to 735 ILCS 5/8-1202, which provides for the certification of court records. The Court disregards that argument as speculative and undeveloped.

[12] "The mandate of a court of review is the transmittal of the judgment of that court to the circuit court, and revests the circuit court with jurisdiction." *PSL Realty Co. v. Granite Inv. Co.*, 86 Ill. 2d 291, 304 (1981). "The date of the issuance of the mandate does not control the effective date of the appellate court judgment." *Id.*

### III.  <u>Matthew's Claim</u>

Matthew challenges the bankruptcy court's decision to disallow his claim on several grounds. First, he argues the claim was entitled to presumptive validity because the omission of a date or basis for the claim on the schedules is not enough to override the presumption under the applicable statutory provision and rules. Second, Matthew asserts that the bankruptcy court erred in its determination that his claim was unenforceable under 11 U.S.C. § 502(b)(1) because he had not loaned Debtor the funds and was not otherwise entitled to repayment. Last, he contests whether the Committee even had standing to object to his claim.

### A.  <u>Presumptive Validity</u>

Section 1111(a) of the Bankruptcy Code provides that a claim is deemed filed in a chapter 11 case if listed in the debtor's schedules. 11 U.S.C. § 1111(a). The Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") require the debtor to file schedules "prepared as prescribed" by the appropriate official form. Fed. R. Bankr. P. 1007(b)(1)(A). In turn, the official form for the schedule of liabilities requires that the debtor provide certain information about the claim: the creditor's name and address; who incurred the debt; if the claim is a community debt; if the claim is subject to offset; the last four digits of the account number; when the debt was incurred; if the claim is contingent, unliquidated, or disputed; the type of claim; and the total claim amount. Official Form B 106E/F. "If the debtor selects 'other[]' [for the type of claim,] the debtor must specify the basis of the claim." Official Form 106 (Committee Note). The Bankruptcy Rules also provide that "[a]n entry on the schedule of liabilities . . . is prima facie evidence of the validity and amount of a creditor's claim—except for a claim scheduled as disputed, contingent, or unliquidated." Fed. R. Bankr. P. 3003(b)(1).

The bankruptcy court found that Matthew's claim was not entitled to a rebuttable presumption of allowance in its favor because Debtor's schedule omitted material information about the claim. (R-2 at 21-23). Specifically, Debtor failed to state when the debt was incurred and selected "other" for type of claim but failed to specify the basis of the claim. (*Id.*) That did not end the inquiry, though, because Matthew effectively cured those defects by providing supplemental information in response to the Committee's objection. As a result, the bankruptcy court went on to consider whether there were substantive grounds for disallowing the claim under Bankruptcy Code section 502(b)(1), as discussed below.

Matthew now argues that the bankruptcy court erred in its threshold determination that his claim was not entitled to presumptive validity. Specifically, he relies upon Bankruptcy Rule 3003(b)(1), which states that inclusion of a claim on a schedule of liabilities is prima facie evidence of its validity and amount, unless it is listed as disputed, contingent, or unliquidated. Because his claim was not so listed, he contends the rule deems it prima facie valid. Not so. It is fundamental that statutory provisions should be construed to both avoid conflicts and absurd results. *Precision Indus., Inc. v. Qualitech Steel SBQ, LLC*, 327 F.3d 537, 544 (7th Cir. 2003) (conflicts); *Zbaraz v. Madigan*, 572 F.3d 370, 387 (7th Cir. 2009) (absurd results). The Court has no trouble construing the two rules consistently with those principles.

Reading the rules together, Bankruptcy Rule 3003(b)(1) presupposes the debtor prepared his schedule of liabilities as required by Bankruptcy Rule 1007(b)(1)(A) (i.e., as prescribed by the official form). Thus, if the debtor fails to include information in the schedules required by the form, then the entry is not entitled to a presumption of validity if subject to an objection. The Committee points out the absurdity of Matthew's argument by way of example. If only a claim's status as being listed as disputed, contingent, or unliquidated mattered for purposes of giving rise to

presumptive validity, then the omission of any information required by the official form (e.g., creditor's name, total amount of the claim, etc.) would be inconsequential. Matthew's position effectively reads Bankruptcy Rule 1007(b)(1)(A) out of existence and leads to absurd results. Such a reading directly contradicts the basic rules of statutory interpretation.

Still, Matthew attempts to turn the Committee's argument on its head by contending that if debtors were required to include "every specific bit" of information, even immaterial details, this district would be alone in shifting the burden to creditors to confirm there is enough provided in the schedules, thereby opening the door for less than scrupulous debtors to file schedules with incomplete information. This position blatantly overstates the Committee's position and the bankruptcy court's holding. The court did not hold that a scheduled claim is *automatically* invalid if *any* information is missing from the schedules. Rather, reading the decision in context, the court found that a scheduled claim omitting material and required information is not entitled to presumptive validity, when objected to under the circumstances that existed in this case.

Even so, Matthew argues that the omissions were immaterial and therefore should not have precluded a finding of presumptive validity. On this point, the bankruptcy court found the timing and circumstances surrounding the claim particularly relevant. Debtor filed an amended proposed plan and amended schedules first listing his son's claim in the middle of contentious litigation in which the Committee questioned Matthew's standing. (R-2 at 21). The bankruptcy court twice observed that these circumstances have all "the hallmarks of blatant attempts of the Debtor to confer standing on his son." (R-2 at 23).[13] With this background, information about the timing and

---

[13] The Court summarily rejects Matthew's argument that the inclusion of this statement in the bankruptcy court's March 17, 2023 order shows that it made an initial factual determination without taking any evidence and had already made up its mind. The observation about the fishy nature of Debtor's actions is just that—an observation— not a premature factual finding. Any assertion to the contrary is belied by the fact that the order found that Matthew

nature of Matthew's claim was material. Matthew contends it was not relevant because the Committee was well-aware of his claim due to their litigation history. But given the complex financial history between Debtor and his son, it is not unreasonable to expect complete information about the claim to be included in the schedules in order to determine its exact nature. After all, there are deadlines for objecting to claims such that a creditor who sleeps on its rights may forfeit a higher payout.

Accordingly, the Court agrees with the bankruptcy court's assessment—an objected-to scheduled claim is not entitled to presumptive validity where the schedules omit material and required information about the claim, especially when the creditor's standing is subject to scrutiny at the time the claim is scheduled.

### B.    Section 502(b)(1)

Section 502(b)(1) of the Bankruptcy Code provides that the court shall not allow a claim to the extent that it "is unenforceable against the debtor and property of the debtor, under any agreement or applicable law . . . ." 11 U.S.C. § 502(b)(1). To determine whether a claim is enforceable, the court must examine the "underlying substantive law creating the debtor's obligation . . . ." *Raleigh v. Ill. Dep't of Rev.*, 530 U.S. 15, 20 (2000).

In its decision, the bankruptcy court meticulously traced the funds that were used to purchase the CDs pledged to collateralize the LOC. (R-2 at 23-32). The court found that Matthew

---

had standing at the time of entry, and then the court later held a 5-day evidentiary hearing on his claim. It was only after considering all the evidence that the bankruptcy court found the timing and circumstances surrounding the filing of the claim relevant to its ultimate determination. Although Matthew attempts to pick part each aspect of this finding (e.g., the reasons for filing the amended schedules and not filing a claim), bankruptcy court was in a better position to consider and weigh all the relevant evidence. In that regard, this Court cannot say that its findings were clearly erroneous.

owned most[14] of the funds in two of the CDs by virtue of his joint ownership and exercise of control but nonetheless concluded that he had not loaned the funds to Debtor and was not otherwise entitled to repayment. (*Id.*) The bankruptcy court addressed several potential theories under which Matthew's claim might have been enforceable.

## 1.    <u>Oral Contract</u>

First, the bankruptcy court determined that no oral contract for repayment of the funds existed, based on the finding that Debtor's and Matthew's testimony on this regard was self-serving and unreliable and because they failed to testify as to many of the required elements for formation of an oral contract under Illinois law. (R-2 at 29). On appeal, Matthew's only argument on this issue is that his deposition testimony provided sufficient evidence to find that an oral contract existed. But the bankruptcy court, as the trier of fact, considered all the evidence (or lack thereof) in the record, including Debtor and Matthew's testimony and Matthew's deposition, and found it contradictory in large parts and unconvincing. Even accepting Matthew's deposition testimony at face value, the generic recitation of the elements of a contract are not enough to satisfy the requirement that the terms of a contract be definite and certain. *See Panko v. Advanced Appliance Serv.*, 55 Ill. App. 3d 301, 304 (1st Dist. 1977). As such, upon review of the record, the Court finds no reason to disturb the bankruptcy court's conclusion that the evidence before it did not support the existence of an oral contract.

## 2.    <u>Contract Implied In Fact</u>

Next, the bankruptcy court considered whether Debtor's and Matthew's conduct had given rise to a contract implied in fact and concluded that it had not, because Debtor had not taken the

---

[14] Based on the origin of the funds, the Court found that $42,644.17 of the $475,000 total belonged to Debtor, not Matthew. (R-2 at 25).

position that he owed Matthew anything until his son's standing in the case was challenged. (R-2 at 30). Furthermore, Matthew had never asserted a claim in the case in his own right. (*Id.*) Matthew now argues the bankruptcy court erred because Debtor testified at trial that he "would owe [his son] at some point" and Matthew testified during his deposition that he expected to be paid. True, "in order to recover on an implied contract, the facts and circumstances must show that, at the time the services were rendered, *one party expected to receive payment and the other party intended to make payment.*" *In re Miles*, 652 B.R. 512, 527 (Bankr. N.D. Ill. 2023) (emphasis added) (quoting *Zadrozny v. City Colleges of Chi.*, 220 Ill. App. 3d 290, 296 (1st Dist. 1991)). But the problem with Matthew's theory is, regardless of the credibility of the testimony, that he erroneously relies solely on his and Debtor's self-reported ex post facto states of mind, not their conduct—i.e., the facts and circumstances that would show an expectation to receive payment and intent to pay. For a contract implied in fact, the focus is on whether the parties' actions demonstrate intent to be bound, not their own self-serving testimony regarding intent.

Furthermore, as with the oral contract argument, Matthew was unable to point to any evidence of the essential terms of the agreement. Debtor's testimony that he would owe the money "at some point" is not enough to show when repayment would be due. Finally, Matthew's contention that there was no testimony that Debtor scheduled his claim solely to confer standing misses the mark. The bankruptcy court never stated that it reached that determination based on an express admission during Debtor's testimony. Rather, it seems that the court drew appropriate inferences about Debtor's likely motivations by taking notice of the timing and circumstances surrounding his actions from the case history and docket. For these reasons, the Court agrees that the bankruptcy court did not err in concluding that no contract implied in fact was shown, as

Debtor's and Matthew's "actions do not speak to parties who believe a legitimate contract exists." (R-2 at 30).

### 3. Contract Implied In Law

Last, the bankruptcy court determined that no contract implied in law existed because it was not unjust for Debtor to retain the benefit of having been advanced the funds, Matthew also benefited from advancing the funds, and Matthew's conduct did not indicate any expectation of repayment. (R-2 at 32). Matthew appeals this conclusion on the basis that it focused on unjust enrichment only and failed to consider quantum meruit or other quasi-contract theory. Essentially, Matthew maintains that principles of "equity and good conscience" dictate that Debtor should have to repay him.

To the contrary, the bankruptcy court expressly considered more than unjust enrichment. (*See* R-2 at 32) ("the court cannot conclude that the elements of unjust enrichment *or some other equitable doctrine* would require the creation of a debt in favor of Matthew[.]") (emphasis added). Indeed, the court considered the effect of having been advanced the funds on Debtor (which is relevant to unjust enrichment), the effect of advancing the funds on Matthew (which is relevant to quantum meruit), and evidence of Matthew's actions and expectations (which is relevant to general principles of equity and fairness). Based on its view of the evidence, the court concluded that no contract implied in law arose under *any* equitable doctrine. Matthew has not provided the Court with any reason to disturb that conclusion.

### C. The Committee's Standing to Object

Section 1109 of the Bankruptcy Code provides that "[a] party in interest, including . . . a creditors' committee . . . may raise and may appear and be heard on any issue in a case under this chapter." 11 U.S.C. § 1109(b). In turn, Section 502 provides that "[a] claim or interest . . . is

21

deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). In addition, "[t]o have standing to object to a bankruptcy order, a person must have a pecuniary interest in the outcome of the bankruptcy proceedings. Only those persons affected pecuniarily by a bankruptcy order have standing to appeal that order." *Cult Awareness Network*, 151 F.3d at 607.

Matthew argues that the bankruptcy court erred by failing to dismiss the Committee's objection to his claim based on the Committee's lack of standing. He insists that, because Debtor's proposed plan provided for 100% distribution to general unsecured creditors and subordination of his claim, the Committee lacked a pecuniary interest because it would be paid in full regardless of the outcome of the objection. The Committee responds that, as a party in interest under Section 1109, it had "default" standing to be heard on the matter, and that, in any event, it has a pecuniary interest in the outcome because the distributions to general unsecured creditors would be diluted by Matthew's claim if the case were to proceed as a chapter 7 liquidation instead of a chapter 11 reorganization.

This issue is effectively moot now that the case has been converted to a chapter 7 liquidation. But if the case were still hanging in limbo as a chapter 11 with a proposed reorganization plan and pending motion to convert, as was the situation when the appeal was filed, the Committee would certainly have a pecuniary interest in the outcome, as it was actively pursuing conversion and the risk of dilution was a real threat. Matthew's other arguments concerning whether the Committee was acting outside of its authority or for improper purposes are summarily rejected, as no evidence was cited on those points.

## **CONCLUSION**

For the reasons stated above, the Court affirms the bankruptcy court orders overruling Debtor's objection to Wintrust's claim and sustaining the Committee's objection to Matthew's

claim. Because the disallowance of Matthew's claim deprives him of standing in the underlying bankruptcy case, the Court need not consider the other orders he appealed.


**DATED**: January 30, 2025                **ENTERED**:


LaShonda A. Hunt
United States District Judge